Filed 9/11/20

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Tehama)

----

| | |
|---|---|
| THE PEOPLE, | C090041 |
| Plaintiff and Respondent, | (Super. Ct. No. NCR41795) |
| v. | |
| VINCENT MICHAEL LOMBARDO, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Tehama County, C. Todd Bottke, Judge. Reversed.

Rebecca P. Jones, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Thomas S. Patterson, Assistant Attorney General, Tamar Pachter and Nelson R. Richards, Deputy Attorneys General, for the California Attorney General as Amicus Curiae on behalf of Defendant and Appellant.

Matthew D. Rodgers, District Attorney (Tehama), James Waugh, Assistant District Attorney, and Gloria Han, Deputy District Attorney, for Plaintiff and Respondent.

In 1996 a jury found defendant Vincent Michael Lombardo guilty of second degree murder. In 2019 defendant filed a petition for resentencing under newly enacted Penal Code section 1170.95,[1] which was enacted as part of Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Stats. 2018, ch. 1015) (Senate Bill 1437).

The superior court denied the petition because, in its view, Senate Bill 1437 impermissibly amended Proposition 7 (Ballot Pamp., Gen. Elec. (Nov. 7, 1978) text of Prop. 7) and Proposition 115 (Ballot Pamp., Primary Elec. (June 5, 1990) text of Prop. 115). We disagree with the superior court and agree with the unanimous conclusion of other appellate courts that have addressed the issue: Senate Bill 1437 is not an invalid amendment of either Propositions 7 or 115.

Though the superior court did not clearly rule on the issue, the parties also ask us to determine whether Senate Bill 1437 violates Marsy's Law (Ballot Pamp., Gen. Elec. (Nov. 4, 2008) text of Prop. 9). We conclude it does not, thereby agreeing with the unanimous conclusion of other appellate courts on this issue as well.

Accordingly, we reverse the trial court's ruling and remand for further proceedings.

## BACKGROUND

A. *Legal Background*

1. Senate Bill 1437

On September 30, 2018, the Governor signed Senate Bill 1437, which was enacted to "amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018,

---

[1] Undesignated statutory references are to the Penal Code.

ch. 1015, § 1, subd. (f).)  Effective January 1, 2019, the legislation amended sections 188 and 189 and added section 1170.95 to the Penal Code.

"Generally, malice is an essential element of the crime of murder.  (§ 187.)" (*People v. Johns* (2020) 50 Cal.App.5th 46, 57 (*Johns*).)  "Before Senate Bill No. 1437, the felony-murder rule and the natural and probable consequences doctrine were exceptions to the actual malice requirement.  The felony-murder rule made 'a killing while committing certain felonies murder without the necessity of further examining the defendant's mental state.'  [Citation.]  First degree felony murder was 'a killing during the course of a felony specified in [Penal Code] section 189, such as rape, burglary, or robbery.'  [Citation.]  Second degree felony murder was 'an unlawful killing in the course of the commission of a felony that is inherently dangerous to human life but is not included among the felonies enumerated in [Penal Code] section 189.'  [Citation.]  The natural and probable consequences doctrine made 'a person who aids and abets a confederate in the commission of a criminal act . . . liable not only for that crime (the target crime), but also for any other offense (nontarget crime) [including murder] committed by the confederate as a "natural and probable consequence" of the crime originally aided and abetted.'  [Citation.]" (*Johns, supra*, 50 Cal.App.5th at pp. 57-58.)

Senate Bill 1437 changed the "substantive offense of first and second degree murder, removing . . . exceptions that had allowed such convictions despite the absence of malice.  Effective January 1, 2019, Senate Bill No. 1437 made that change by amending Penal Code sections 188 and 189 to restrict the scope of first degree felony murder and eliminate second degree murder based on the natural and probable consequences doctrine.  (Sen. Bill 1437, §§ 2-3.)  As amended, Penal Code section 188 directs malice may not 'be imputed to a person based solely on his or her participation in a crime.'  (Pen. Code, § 188, subd. (a)(3).)  Instead, 'to be convicted of murder, a principal in a crime shall act with malice,' (§ 188, subd. (a)(3)) except for cases applying the narrowed felony-murder rule in new subdivision (e) of Penal Code section 189, under

3

which '[a] participant in the perpetration or attempted perpetration of a felony listed in subdivision (a) in which a death occurs is liable for murder *only if* one of the following is proven:  [¶]  (1) The person was the actual killer[;]  [¶]  (2) The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree[;]  [¶]  [or] (3) The person was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of . . . section 190.2.'  (Pen. Code, § 189, subd. (e), italics added.)"  (*Johns, supra*, 50 Cal.App.5th at pp. 58-59, fn. omitted.)

New section 1170.95 permits those convicted of felony murder or murder under the natural and probable consequences doctrine to petition the sentencing court to vacate the conviction and to be resentenced on any remaining counts where:  "(1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine.  [¶]  (2) The petitioner was convicted of first degree or second degree murder following a trial or accepted a plea offer in lieu of a trial at which the petitioner could be convicted for first degree or second degree murder.  [¶]  (3) The petitioner could not be convicted of first or second degree murder because of changes to Section 188 or 189 made effective January 1, 2019."  (§ 1170.95, subd. (a).)

2.     Proposition 7

Proposition 7 "was approved by voters in a statewide election in November 1978. The statutory changes it made can be grouped into two categories:  (1) it increased the penalties for first and second degree murder by amending section 190 [citation]; and (2) it sought to strengthen and expand California's death penalty with amendments to sections 190.1 through 190.5 [citation].  [¶]  Prior to the passage of Proposition 7, a first degree murder conviction was punishable by life imprisonment with the possibility of parole after seven years.  A defendant convicted of second degree murder could be sentenced to

4

five, six, or seven years in prison.  Proposition 7 increased the punishment for first degree murder to life imprisonment with the possibility of parole after 25 years, and the penalty for second degree murder was increased to life imprisonment with the possibility of parole after 15 years.  [Citation.]" (*People v. Cruz* (2020) 46 Cal.App.5th 740, 753-754, fns. omitted (*Cruz*).)

3.      Proposition 115

Proposition 115 "made several changes to criminal law and procedure when passed by voters in 1990.  [Citation.]  Pertinent here is its amendment to section 189, wherein it added five more serious felonies (kidnapping, train wrecking, and three sex offenses [§§ 286, 288a, 289]) to the list of felonies for first degree felony-murder liability.  [Citation.]  The 'Analysis by the Legislative Analyst' informed voters that among the 'numerous significant and complex changes' Proposition 115 would make to criminal law, it would expand 'the definition of first-degree murder to include murder committed during the commission or attempted commission of additional serious crimes.' [Citation.]" (*Cruz, supra*, 46 Cal.App.5th at p. 759.)

Proposition 115 also " 'revised the scope of capital liability for aiding and abetting felony murders' by amending section 190.2 to indicate that for first degree felony murder ' "every person, not the actual killer, who, with reckless indifference to human life and as a major participant" aids or abets the crime may be convicted of special circumstance murder.' [Citation.]" (*Cruz, supra*, 46 Cal.App.5th at p. 759.)

4.      Marsy's Law/Proposition 9

"Marsy's Law strengthened 'a "broad spectrum of victims' rights" ' by amending the California Constitution and adding provisions to the Penal Code.  [Citation.]  The initiative added numerous specific victims' rights to the Constitution, including (relevant here) the rights '[t]o a speedy trial and a prompt and final conclusion of the case and any related post-judgment proceedings' and '[t]o have the safety of the victim, the victim's family, and the general public considered before any parole or other post-judgment

5

release decision is made.' (Cal. Const., art. I, § 28, subd. (b)(9), (16).)" (*Johns, supra*, 50 Cal.App.5th at p. 68.)

5. Amendment of Voter Initiatives

"[A] statute enacted through a voter initiative is afforded special protection that limits the Legislature's ability to modify it. Such a statute 'may be changed only with the approval of the electorate unless the initiative measure itself permits amendment or repeal without voter approval.' [Citations.] Article II, section 10, subdivision (c), of the California Constitution states: 'The Legislature may amend or repeal an initiative statute by another statute that becomes effective only when approved by the electors unless the initiative statute permits amendment or repeal without the electors' approval.' " (*Cruz, supra*, 46 Cal.App.5th at pp. 748-749.)

B. *Procedural Background*

1. The Petition

Defendant's 1996 murder conviction arose out of his participation in an altercation that led to the death of Robert Duane Mehringer.

A jury convicted defendant of second degree murder (§ 187) and acquitted him of first degree felony murder and second degree robbery (§ 211).

In March 2019 defendant filed a petition for resentencing in the superior court pursuant to section 1170.95. The People initially opposed the petition on the ground that defendant was ineligible for Senate Bill 1437 relief because of the facts of his case. Later, the People opposed the petition by attacking the propriety of Senate Bill 1437 itself.

2. The Superior Court's Ruling

In July 2019 the superior court denied the petition, agreeing with the People's challenge to Senate Bill 1437, and explaining its reasoning thusly: "[N]o matter what kind of wordsmithing you engage in, the substantive net effect of SB 1437 is without a doubt an [impermissible] amendment . . . You are talking about wholesale alterations

6

with regard to the punitive scheme with regard to the felony murder rule in California as enacted by Prop. 7 and Prop. 115.  [¶] . . . [¶]

". . . And, that is not even to get to the issue of Marsy's Law with those changes being made with Marsy's Law being enacted under Prop. 9.  [¶]  With those amendments being contrary to what is allowable under the California Constitution under Article 2, Section 10 running in violation of Prop. 7 and Prop. 115 and perhaps also Prop. 9 . . . [section] 1170.95 as applied is unconstitutional.

". . . The [c]ourt is not making any finding as to whether or not there are factual circumstances that if [section] 1170.95 was found to be constitutional that [defendant] cannot . . . re-submit [his] petition[ ]."

Defendant timely appealed.

## DISCUSSION

A.      Proposition 7 and Proposition 115

Invoking *People v. Kelly* (2010) 47 Cal.4th 1008 (*Kelly*), defendant argues Senate Bill 1437 makes changes to related but *distinct* areas of law that Proposition 7 and Proposition 115 are concerned with.  Defendant does not argue that Senate Bill 1437 *permissibly* amended Proposition 7 and Proposition 115.  Rather, he argues Senate Bill 1437 *did not amend* those voter initiatives.[2]  Accordingly, defendant contends the superior court erred by ruling that Senate Bill 1437 *did* amend those voter initiatives.

---

[2]      "Proposition 7 did not permit legislative amendment of its statutory provisions without voter approval.  (*People v. Cooper* [(2002) 27 Cal.4th 38,] 44.)  Proposition 115 authorized amendment of its statutory provisions by a two-thirds vote in both houses of the Legislature.  [Citation.]  Senate Bill 1437 was approved by two-thirds of the California State Senate but not the Assembly and was not submitted to voters for approval.  Thus, if Senate Bill 1437 *amends* an initiative statute approved by the voters in either Proposition 7 or Proposition 115, it violates article II, section 10, subdivision (c), of the California Constitution."  (*Cruz, supra*, 46 Cal.App.5th at p. 750, fn. omitted.)

7

Respondent, the Tehama County District Attorney, argues Senate Bill 1437 unconstitutionally amends Proposition 7, because it "takes away from Proposition 7's mandates regarding the penalties for . . . murder by redefining and narrowing what constitutes the crime of murder for an accomplice," and creates a means for "vacating the punishment of previously lawfully convicted . . . murderers." Respondent argues Senate Bill 1437 unconstitutionally amends Proposition 115, because it "pares down the number of persons who may be convicted and punished for first degree felony murder . . . and . . . conflicts with the electorate's intent to extend liability for special circumstances felony murder to aiders and abettors lacking an intent to kill."

The other appellate courts that have considered these issues unanimously have rejected arguments similar to respondent's. (See, e.g., *People v. Superior Court (Gooden)* (2019) 42 Cal.App.5th 270, 286 (*Gooden*) [4th App. Dist., Div. 1]; *Cruz, supra*, 46 Cal.App.5th at p. 747 [4th App. Dist., Div. 3]; *Johns, supra*, 50 Cal.App.5th at p. 63 [4th App. Dist., Div. 2]; *People v. Bucio* (2020) 48 Cal.App.5th 300, 311-312 (*Bucio*) [2nd App. Dist., Div. 6].)

We agree with those decisions.

In *Kelly*, our Supreme Court emphasized that "[t]he Legislature remains free to address a ' "related but distinct area" ' [citations] or a matter that an initiative measure 'does not specifically authorize *or* prohibit.' " (*Kelly, supra*, 47 Cal.4th at pp. 1025-1026.) Senate Bill 1437 addresses areas of law that are related to, but distinct from, what Propositions 7 and 115 address.

Contrary to respondent's contentions, by "redefining and narrowing" the crime of murder, Senate Bill 1437 does *not* thereby "take[ ] away from Proposition 7's mandates regarding the *penalties*" for murder. (Italics added.) "The punishment for murder remains the same. Penalties and elements of a crime are different." (*Bucio, supra*, 48 Cal.App.5th at pp. 311-312.) While crimes and their punishment are invariably linked (*Apprendi v. New Jersey* (2000) 530 U.S. 466, 478 [120 S.Ct. 2348]), " 'the definition of

8

crimes generally has not been thought automatically to dictate what should be the proper penalty.' " (*People v. Banks* (2015) 61 Cal.4th 788, 801.)[3]

And while, by adding section 1170.95, Senate Bill 1437 did indeed create a vehicle for vacatur of some murder *convictions*, Senate Bill 1437 did *not* thereby truly create a means for "vacating the *punishment* of . . . lawfully convicted . . . murderers." (Italics added.) "The effect of a successful petition under section 1170.95 ' " 'is to vacate the judgment . . . as if no judgment had ever been rendered.' " ' " (*Gooden, supra*, 42 Cal.App.5th at p. 286.)

Regarding Proposition 115,[4] respondent's assertion that Senate Bill 1437 "pares down the number of persons who may be convicted and punished for first degree felony

---

[3] In the "Background" portion of the argument section of his brief, respondent invokes a June 2018 opinion letter by the Legislative Counsel for the proposition that the "Legislature chose to ignore . . . legal advice" that Senate Bill 1437 "would require voter approval" under the California Constitution. But, as defendant notes, that opinion letter is not in the appellate record. Further, respondent did not ask us to take judicial notice of the opinion letter. (Cf. *Nguyen v. Nguyen* (2008) 158 Cal.App.4th 1636, 1658, fn. 22 [granting request to take judicial notice of an opinion of the Legislative Counsel].)

And even if respondent had provided the opinion letter and asked us to take judicial notice of it, its value, for our purposes, would be unclear. (Cf. *Gooden, supra*, 42 Cal.App.5th at p. 285 [noting "uncertainty" whether Legislative Counsel opinion letter dated June 20, 2018, pertained to Senate Bill 1437 or a bill that "was not enacted, but would have amended Penal Code sections 189, 190, and 190.2, among others, if it had passed"].)

[4] Though defendant does not raise the issue, we note that his petition to vacate his *second* degree murder conviction apparently does not implicate Proposition 115, which addressed only *first* degree murder. (See Ballot Pamp., Primary Elec. (June 5, 1990) at p. 66 [text of Prop. 115, § 9]; *id.* at p. 32 [analysis of Prop. 115 by Legis. Analyst]; see generally *Cruz, supra*, 46 Cal.App.5th at p. 759.) Thus, the superior court's denial of the petition, on the ground that section "1170.95 as applied is unconstitutional," may be questionable insofar as the ruling rested on an analysis of Proposition 115.

9

murder," misses the relevant inquiry: whether Senate Bill 1437 addresses a matter that Proposition 115 specifically authorizes or prohibits. It does not.

"Proposition 115 amended section 189 to add select crimes to the list of predicate offenses for first degree felony-murder liability." (*Bucio, supra*, 48 Cal.App.5th at p. 311.) Senate Bill 1437 "did not augment or restrict the list of predicate felonies on which felony murder may be based. Rather, it amended the mental state necessary for murder, which is 'a distinct topic not addressed by Proposition 115's text or ballot materials.' (*Gooden,* [*supra*, 42 Cal.App.5th] at p. 287.)" (*Bucio*, at p. 312; see also *Cruz, supra*, 46 Cal.App.5th at p. 760 ["While the Legislature cannot remove Proposition 115's five felonies from the list for first degree felony-murder liability, it can limit liability for accomplices under the felony-murder rule"].)

Accordingly, we conclude that Senate Bill 1437 does not amend either Propositions 7 or 115.

B.     Marsy's Law/Proposition 9

As an initial matter, we note that the superior court's denial of defendant's petition did not explicitly rest on a conclusion that Senate Bill 1437 violated Marsy's Law. In its oral ruling, the superior court stated that it did "not even . . . get to the issue of Marsy's Law," but did observe that Senate Bill 1437 "perhaps also" contravened Marsy's Law.

Because the parties briefed the issue both in the superior court and here and because—given the tenor of the trial court's ruling—this issue is likely to reoccur in the trial court if we were to be silent on it, we will reach the merits of the issue. (Cf. *People v. Wilson* (1992) 3 Cal.4th 926, 937 [deciding to address issues raised on appeal, that were "likely to recur" in the superior court, even though there was no need to resolve the issues to adjudicate the matter].)

10

Respondent argues the "resentencing provision" of Senate Bill 1437—section 1170.95—"fails to honor the rights of victims" protected by certain provisions of Marsy's Law.[5]

Defendant argues Senate Bill 1437 does not violate Marsy's Law.

---

[5] Respondent invokes article I, section 28, subdivisions (a)(4), (a)(6), (b)(9), (b)(16), and (f)(5) of the California Constitution.

Article I, section 28, subdivision (a)(4) provides, as relevant here: "The rights of victims . . . include broader shared collective rights that are held in common with all of the People of the State of California and that are enforceable through . . . good-faith efforts and actions of California's elected, appointed, and publicly employed officials. . . ."

Article I, section 28, subdivision (a)(6) provides: "Victims of crime are entitled to finality in their criminal cases. Lengthy appeals and other post-judgment proceedings that challenge criminal convictions, frequent and difficult parole hearings that threaten to release criminal offenders, and the ongoing threat that the sentences of criminal wrongdoers will be reduced, prolong the suffering of crime victims for many years after the crimes themselves have been perpetrated. This prolonged suffering of crime victims and their families must come to an end."

Article I, section 28, subdivision (b)(9) protects a victim's right "[t]o a speedy trial and a prompt and final conclusion of the case and any related post-judgment proceedings."

Article I, section 28, subdivision (b)(16) protects a victim's right "[t]o have the safety of the victim, the victim's family, and the general public considered before any parole or other post-judgment release decision is made."

Article I, section 28, subdivision (f)(5) provides: "Truth in Sentencing. Sentences that are individually imposed upon convicted criminal wrongdoers based upon the facts and circumstances surrounding their cases shall be carried out in compliance with the courts' sentencing orders, and shall not be substantially diminished by early release policies intended to alleviate overcrowding in custodial facilities. . . ."

Respondent also invokes uncodified initiative provisions of Proposition 9. But because those provisions do not determine rights, we reject respondent's argument to the extent it relies on those provisions. (See *People v. Lamoureux* (2019) 42 Cal.App.5th 241, 266 (*Lamoureux*).)

11

We agree with the analyses of other appellate courts that have rejected Marsy's Law challenges to Senate Bill 1437. (See, e.g., *Lamoureux, supra*, 42 Cal.App.5th at pp. 264-266; *Johns, supra*, 50 Cal.App.5th at pp. 68-70; *Bucio, supra*, 48 Cal.App.5th at pp. 312-313.)

"Although . . . we should, as a general matter, afford Marsy's Law 'a broad interpretation protective of victims' rights' " (*Johns, supra*, 50 Cal.App.5th at p. 69) we should also, as a general matter, presume that legislation is valid (*Kelly, supra*, 47 Cal.4th at p. 1047).

Citing article I, section 28, subdivisions (a)(6) and (b)(9) of the California Constitution, and invoking subdivision (a)(4)'s "good-faith effort" language, respondent contends that "California's elected officials have made no good-faith effort to even consider the victims' and society's shared collective right to a 'prompt and final' conclusion" to defendant's case.

We reject respondent's argument to the extent it relies on subdivisions (a)(4) and (a)(6), because those provisions articulate findings and declarations, "not an independent source of enforceable rights." (*Lamoureux, supra*, 42 Cal.App.5th at p. 266.)

As for subdivision (b)(9), and its promise of a "prompt and final conclusion," "we decline to interpret [Marsy's Law] so broadly to find that voters intended to impede the Legislature from creating new postjudgment proceedings. 'It would be anomalous and untenable for us to conclude, as [respondent] impliedly suggest, that the voters intended to categorically foreclose the creation of any new postjudgment proceedings not in existence at the time Marsy's Law was approved simply because the voters granted crime victims a right to a "prompt and final conclusion" of criminal cases.' (*Lamoureux, supra*, 42 Cal.App.5th at p. 265.)" (*Johns, supra*, 50 Cal.App.5th at p. 69.)

Quoting from article I, section 28, subdivision (b)(16) of the California Constitution, respondent argues that "no part of [Senate Bill] 1437 resentencing procedures honors the victims' right 'to have . . . the victim's family, and the general

public considered before any parole or other post-judgment release decision is made,' " because Senate Bill 1437 has "no public safety considerations whatsoever." This expansive reading and suggested application of Marsy's Law far exceeds the scope of its language, which speaks to particularized decisions in individual cases, not public safety goals. Assuming for the sake of argument that vacatur of a murder conviction is a postjudgment release decision within the meaning of the term as used in subdivision (b)(16), "[i]f a court rules a petitioner is entitled to vacatur of his or her murder conviction, it must then resentence the petitioner on any remaining counts. [Citation.] During resentencing, the court may weigh the same sentencing factors it considers when it initially sentences a defendant, including whether the defendant presents 'a serious danger to society' and '[a]ny other factors [that] reasonably relate to the defendant or the circumstances under which the crime was committed.' (Cal. Rules of Court, rule 4.421(b)(1), (c).) At minimum, the trial court's ability to consider these factors during resentencing ensures the safety of the victim, the victim's family, and the general public are 'considered,' as required by Marsy's Law." (*Lamoureux, supra*, 42 Cal.App.5th at p. 266; accord *Bucio, supra*, 48 Cal.App.5th at p. 313; *Johns, supra*, 50 Cal.App.5th at p. 69.)

Finally, respondent presents an argument that to our knowledge has not been addressed in a published decision. He argues that uncodified section 1, subdivision (e) of Senate Bill 1437 finds and declares a purpose—alleviation of prison overcrowding—that conflicts with article I, section 28, subdivision (f)(5) of the California Constitution, which reads as follows: "Sentences that are individually imposed upon convicted criminal wrongdoers based upon the facts and circumstances surrounding their cases shall be carried out in compliance with the courts' sentencing orders, and shall not be substantially diminished by early release policies intended to alleviate overcrowding in custodial facilities."

The language of the constitutional provision clearly expresses a policy—that sentences imposed on criminal defendants should be carried out and not modified to address overcrowding. Whether the policy as expressed is self-executing could be questioned. Regardless, it is clear the alleviation of overcrowding, though mentioned in passing, was not a central focus of Senate Bill 1437.

Thus, the uncodified section provides, "Reform is needed in California to limit convictions and subsequent sentencing so that the law of California *fairly addresses the culpability of the individual and assists in the reduction of prison overcrowding, which partially results from lengthy sentences that are not commensurate with the culpability of the individual.*" (Stats. 2018, ch. 1015, § 1, subd. (e), italics added.) Other findings and declarations in section 1 of Senate Bill 1437 include: "a need for statutory changes to more equitably sentence offenders in accordance with their involvement in homicides," (*id.*, § 1, subd. (b)), and the "bedrock principle of the law and of equity that a person should be punished for his or her actions according to his or her own level of individual culpability," (*id.*, § 1, subd. (d)).

We agree with defendant and with the Attorney General, as amicus, that the bill was passed to address a perceived unfairness in the law. Obviously any changes in the law of crimes and punishments that restrict the number of offenders subject to punishment will have an effect on the number of people sentenced to prison, but this consequence does not justify their characterization as "early release policies intended to alleviate overcrowding in custodial facilities." (Cal. Const., art I, § 28, subd. (f)(5).) Rather, the measure was "first and foremost, a law designed to ensure" that accomplices are convicted of crimes reflecting their actual culpability and was "not primarily concerned with addressing overcrowding or reducing sentences."

In light of our earlier analysis of respondent's Proposition 7 and Proposition 115 challenges to Senate Bill 1437, we think the design of Senate Bill 1437 reflects a policy

to *narrow the definition* of murder rather than a policy to *reduce the punishment* for murder.  Accordingly, we conclude that Senate Bill 1437 does not violate Marsy's Law.[6]

DISPOSITION

The order is reversed.

/s/
RAYE, P. J.

We concur:

/s/
ROBIE, J.

/s/
MAURO, J.

---

[6] Respondent presents another issue in the "Conclusion" portion of his brief:  that section 1170.95 "violates double jeopardy principles by allowing the prosecution to retry a defendant on a higher level offense."  We will not address this undeveloped argument that (a) is forfeited because it was not stated under a separate heading or subheading, and (b) which respondent concedes he lacks standing to advance.  (See *Parisi v. Mazzaferro* (2016) 5 Cal.App.5th 1219, 1226, fn. 10 [forfeiture], disapproved on another ground in *Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1010, fn. 7; *Lamoureux, supra*, 42 Cal.App.5th at p. 267 ["the People lack standing to challenge . . . section 1170.95 based on any alleged infringement on petitioners' constitutional rights"].)

We also will not address "separation of powers" arguments raised by defendant and the Attorney General.  Respondent did not brief the issue on appeal, and the superior court's ruling did not rest on it.